IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JANET L. HAWTHORNE**, as Administratrix of the Estate of **DONALD C. HAWTHORNE,** deceased, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 2:12cv1826 **Electronic Filing** |
| **FUNDAMENTAL LONG TERM CARE HOLDINGS, LLC; THI OF PENNSYLVANIA AT GREENERY OF CANONSBURG, LLC** d/b/a GREENERY SPECIALTY CARE CENTER OF CANONSBURG; **FUNDAMENTAL CLINICAL CONSULTING, LLC** a/k/a FUNDAMENTAL ADMINISTRATIVE SERVICES, LLC; **FUNDAMENTAL CLINICAL AND OPERATIONAL SERVICES, LLC**; **THI OF PENNSYLVANIA, LLC**; **THI OF BALTIMORE, INC.**; **ANDREW LEROY, NHA,** | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## **OPINION**

Plaintiff commenced this wrongful death action in her capacity as the personal representative of the estate of her deceased husband, Donald C. Hawthorne ("decedent"). Plaintiff's complaint seeks to establish defendants' liability pursuant to causes of action for negligence, corporate negligence and wrongful death. Presently before the court is a motion to compel arbitration which has been filed by all defendants except Fundamental Long Term Care Holdings, LLC., and Fundamental Administrative Services, LLC. For the reasons set forth below, the motion will be granted.

When ruling on a motion to compel arbitration, the court employs the summary judgment standard. Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd., 636 F.2d 51, 54 (3d Cir. 1980). "Only when there is no genuine issue of fact concerning the formation of the agreement should the court decide as a matter of law that the parties did or did not enter into such an agreement." Id. The party opposing the motion receives "the benefit of all reasonable doubts and inferences that may arise." Id. If there is a genuine issue of fact, the Federal Arbitration Act directs that a trial be held to determine whether an arbitration agreement exists. 9 U.S.C. § 4.

In determining whether the parties agreed to arbitrate a particular claim, the ordinary state-law principles governing contract formation apply. China Minmetals Materials Imp. & Exp. Co., Ltd. v. Chi Mei Corp., 334 F.3d 274, 285 (3d Cir. 2003). "Under Pennsylvania law, contract formation requires: (1) a mutual manifestation of an intention to be bound, (2) terms sufficiently definite to be enforced, and (3) consideration." Kirleis v. Dickie, McCamey & Chilcote, P.C., 560 F.3d 156, 160 (3d Cir. 2009). Even where these requirements are satisfied, an agreement to arbitrate may be unenforceable based on a generally applicable contractual defense, such as unconscionability. Alexander v. Anthony Int'l, L.P., 341 F.3d 256, 264 (3d Cir. 2003) (citation omitted).

On February 2, 2011, decedent was discharged from Kindred Hospital and transferred to the THI of Pennsylvania at Greenery of Canonsburg, LLC, doing business as Greenery Specialty Care Center of Canonsburg ("the facility"), for admission and long-term skilled nursing care. His medical history included diagnoses for COPD, respiratory failure, pneumonitis, on-going tobacco and narcotic abuse, gastro esophageal reflux disease, hypertension, anxiety, depression, chronic pain, deep vein thrombus, pneumonia, left below knee amputation, MRSA in his left knee stump, osteomyelitis, cellulitis, tracheostomy, aspiration, peripheral vascular disease, sepsis and multiple pressure ulcers. At the time of transfer neither decedent nor his family could

provide the sustained level of care decedent required and he was dependent upon the staff at the facility to accomplish all of his activities of daily living.

On February 11, 2011, plaintiff executed an admission agreement for decedent and signed a "voluntary arbitration agreement."[1]  The admission agreement expressly provided for decedent's admission into the facility.  It outlined the treatment and care the facility would provide and the terms and conditions under which such treatment and care would be provided.  It also outlined the obligations of (1) decedent as a resident receiving such treatment and care and (2) any representative of the decedent.

Plaintiff acknowledged in the admission agreement that she was entering into the agreement in her personal capacity and as decedent's "representative."  In doing so she specifically agreed to "abide by the terms and conditions set forth in this agreement and the policies of [the] facility."  She also acknowledged that she had received and read the admission handbook and the other admission materials that had been provided by the facility and understood that by expressed reference to these documents they were being made part of the admission agreement.   The arbitration agreement was one of the referenced documents.

The arbitration agreement was a separate document.  It directed the recipient to read it carefully and provided that the agreement was "voluntary and not a condition of admission."  It further provided an executing party seven days to rescind the agreement and explained that the patient's "admission to [the] Facility and the services provided will not be effected [sic] by the exercise of this cancellation provision."  Plaintiff signed the document as the "representative" of decedent.  See Doc. No. 8-1 at 16.  Plaintiff did not rescind the arbitration agreement.

The arbitration agreement provides:

---

[1] Decedent was competent and coherent at this time and could have executed these documents.

> It is further understood that in the event of any controversy or dispute between the parties, arising out of or relating to the Facility's Admission Agreement, or breach thereof, or relating in any way to Resident's stay at the Facility, or to the provisions of care or services to Resident, including but not limited to any alleged tort, personal injury, negligence or other claim, or any federal or state statutory or regulatory claim of any kind, or whether or not there has been a violation of any right(s) granted under State law (collectively disputes), and the parties are unable to resolve such through negotiation, the parties agree that such Dispute(s) shall be resolved by arbitration.

Decedent was identified as the "Resident" in the agreement. The agreement further provides that discovery shall be governed by the Pennsylvania Rules of Civil Procedure, the arbitration shall occur at the facility or as close thereto as practical, and the cost of arbitration shall be borne by the facility (save that the arbitrator may shift certain costs to the resident/representative in the event the facility prevails in the proceeding). The decision of the arbitrator shall be binding on the parties and may be enforced in a court of competent jurisdiction.

Defendants seek to enforce the arbitration agreement pursuant to a third-party beneficiary theory and equitable estoppel. They maintain that plaintiff signed the admission and arbitration agreements as decedent's representative and those agreements are enforceable against plaintiff as a contracting party and against decedent's estate as a third-party beneficiary. The arbitration agreement contractually is enforceable by each of the moving defendants as either a parent company, agent or as an employee of the facility and legally is enforceable by these defendants under the circumstances and Pennsylvania law in any event. In addition, defendants argue that decedent and his estate equitably are estopped from arguing that the arbitration agreement is not binding and enforceable by each of the defendants.

Plaintiff contends that discovery is required in order to develop an evidentiary record and rule on the motion to compel. Specifically, plaintiff did not possess the

authority to waive decedent's constitutional right to a jury trial at the time the agreements were executed. In addition, plaintiff "anticipates that there will be significant issues regarding who the actual parties to the arbitration agreement are." She seeks 90 days of discovery in order to develop an evidentiary record and a jury trial on any disputed matters. Plaintiff also argues that the arbitration agreement is unconscionable and/or unenforceable because it (1) was procured by fraud, (2) violates the Pennsylvania and United States Constitutions (3) lacks consideration, (4) is void as against public policy and (5) is a contract of adhesion.

Plaintiff has failed to identify any issue of material fact that precludes enforcement of the arbitration agreement pursuant to a third-party beneficiary theory. A party will be recognized as a third-party beneficiary "where both parties to the contract express an intention to benefit the third party in the contract itself" or " the circumstances are so compelling that recognition of the beneficiary's right is appropriate to effectuate the intention of the parties, and . . . the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance." Scarpitti v. Weborg, 609 A.2d 147, 150-51 (Pa. 1992).

The basic purpose of the admission agreement was to provide for the treatment and care of decedent. It identified the terms and conditions pursuant to which the facility would provide the same and the obligations of decedent as the resident and plaintiff as his representative in return. In other words, in the formation of their agreement the executing parties had the expressed intent to benefit decedent. In addition, plaintiff entered into the agreement solely for the purpose of obtaining the facility's treatment and care for decedent and the facility promised to provide the benefit of its promised performance to

decedent. Consequently, decedent was a third-party beneficiary of the agreement between plaintiff and the facility.

Third-party beneficiaries enjoy the same contractual rights and can be required to bear the same obligations and limitations as the original contracting parties. Miller v. Allstate Ins. Co., 763 A.2d 401, 404 n.1 (Pa. Super. 2000) (citing General Accident Insurance Company of America v. Parker, 665 A.2d 502, 504 (Pa. Super. 1995) (collecting cases)). These principles apply with equal force to agreements to arbitrate. Highmark Inc. v. Hospital Service Association of Northeastern Pennsylvania, 785 A.2d 93, 99 (Pa. Super. 2001) (third-party beneficiary may enforce an arbitration provision pursuant to the principle that it enjoys the same rights and limitations as the contracting parties). In other words, a third-party beneficiary may enforce an arbitration provision in a contract providing it with benefits and is bound to comply with such a provision when it properly has been invoked. See Johnson v. Pennsylvania National Ins. Companies, 594 A.2d 296, 509 (Pa. 1991) ("As a third party beneficiary under that [contract of insurance], the appellee's rights are 'vulnerable to the same limitations which may be asserted between the promisor and the promisee.' . . . Thus, appellee is bound by the limitations contained in the contract she seeks to enforce.") (quoting Jewelcor Jewelers & Distributors, Inc. v. Corr, 542 A.2d 72, 80 (Pa. Super. 1988), appeal denied, sub nom., Granjewel Jewelers & Distributors, Inc. v. Corr, 569 A.2d 1367 (Pa. 1989)); accord Ross Brothers Const. Co., Inc. v. International Steel Services, Inc., 283 F.3d 867, 876 (7th Cir. 2002) (under Pennsylvania law an arbitration agreement may be enforced by and against a third-party beneficiary) (citing Highmark, 785 A.2d at 99 and Johnson, 594 A.2d at 298-99)).

6

Decedent was the third-party beneficiary of the admission agreement. The agreement incorporated the arbitration agreement as one of its terms. By voluntary choice of the contracting parties the arbitration agreement was executed, not rescinded and became part of the operative contract. As part of the executed contract the arbitration agreement is enforceable against plaintiff as a contracting party. It also is enforceable against decedent as a third-party beneficiary and by extension decedent's estate.[2]

Each of the moving defendants are entitled to enforce the arbitration agreement. Plaintiff essentially alleges that each defendant may be held accountable under theories of ownership and control, agency, joint venture and integrated enterprise. Specifically, it is averred that defendants collectively managed the (1) operation, (2) planning and (3) quality control of the facility, which included control over the quality of care provided.

THI of Pennsylvania is a parent corporation of the facility and THI of Baltimore is the parent corporation of THI of Pennsylvania. Fundamental Clinical and Operational Services, LLC, and Fundamental Clinical Consulting, LLC, were agents providing services to the facility. Andrew Leroy was an employee of the facility. The arbitration agreement is expressly applicable to plaintiff's claims against the facility's parent entities,

---

[2] The same result follows under the principles of equitable estoppel. See THI of S. Carolina at Columbia, LLC v. Wiggins, 2011 WL 4089435, *6 (D.S.C. Sept. 13, 2011) reconsideration denied, 2011 WL 6012498 (D.S.C. Nov. 30, 2011) ("It is undisputed that the Contract was signed by an immediate family member of Hall (Wiggins) for the purpose of obtaining residential care for Hall at Magnolia Manor. After execution of the Contract, Hall became a resident of Magnolia Manor and, for an extended period of time, received the benefits provided for in the Contract. Under these circumstances, where the entity operating Magnolia Manor performed in reliance on the terms of the Contract and Hall received the benefit of the Contract, it would be inequitable for Hall's estate (through its personal representative, Wiggins) to avoid the Contract's Arbitration Provision.") (citing Int'l Paper Co. v. Schwabedizzen Maschinen & Anlagen GMBH, 206 F.3d 411, 417–18 (4th Cir. 2000) (To permit a party to "claim the benefit of the contract and simultaneously avoid its burdens would both disregard equity and contravene the purposes underlying enactment of the [FAA].").

affiliates, owners, employees and agents. Thus, the provisions of the contract extend to each of these defendants.

Furthermore, plaintiff claims against all the moving parties are based on a theory of unified operation and control. Each is said to have participated in exactly the same wrongful conduct. Agency law extends the right to enforce an arbitration award against agents, sister corporations, subsidiaries, and parent/ownership entities of a contracting party "where the interests of such parties are directly related to, if not congruent with, those of a signatory." Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 7 F.3d 1110, 1112 (1993) (citing Isidor Paiwonsky Associates, Inc. v. Sharp Properties, 998 F.2d 145, 155 (3d Cir. 1993). Under all accounts advanced by plaintiff each of the moving parties is a parent entity, agent or employee of the facility that shares a congruent interest. Plaintiff thus presumptively would be able to enforce any judgment from the proceeding against these defendants and in turn each can rely on the principles of agent law and the broad scope of the FAA to compel and participate in the arbitration agreement. Cf. Id. ("Where the parties to such a clause unmistakably intend to arbitrate all controversies which might arise between them, their agreement should be applied to claims against agents or entities related to the signatories."); Sharp Properties, 998 F.2d at 155 ("Applying Barrowclough [v. Kidder, Peabody & Co., 752 F.2d 923 (3d Cir. 1985)]'s logic here, because Bared's and ARI's interests are directly related, if not in fact congruent, it can fairly be assumed that within the arbitration proceedings ARI advanced arguments protective of Bared's interests. There is, therefore, no reason to conclude that the Federal Arbitration Act's overarching policy favoring the enforcement of arbitration awards does not apply to this case.").

Against this backdrop plaintiff has failed to identify any material issue of fact that might bar enforcement of the arbitration agreement and would therefore warrant further discovery and adjudication. She was a contracting party and thus fully was aware of the circumstances surrounding her assent to the agreements. She has not identified any factual basis that plausibly would support a finding that the agreements are unconscionable and/or unenforceable because they were procured by fraud, violate the Pennsylvania and United States Constitutions, lack consideration, or are void as against public policy. Plaintiff also has not explained how defendants would hold exclusive information that is unique or informative to these defenses.

Similarly, plaintiff has failed to allege any factual grounds to support the notion that she was forced into a contract of adhesion with the facility. Plaintiff has not asserted that other facilities offering long-tern nursing care were unavailable to decedent or that no other facility would admit him under the attendant circumstances. She does not dispute that the arbitration agreement was a voluntary document that did not affect decedent's admission into the facility or the care he would receive.

Plaintiff's litany of defenses are not based on any factual foundation that can be gleaned from the facts and circumstances. The operative facts and circumstances generally are known to plaintiff at this juncture. As aptly noted by defendants in their reply brief, each advanced defense is undermined sufficiently by the current record. The invocation of the right to discovery must be based on more than a thinly veiled attempt to initiate a fishing expedition.

Moreover, it is well settled that under the standards governing summary judgment the opponent cannot "merely rely upon conclusory allegations in [its] pleadings or in memoranda and briefs." Harter v. GAF Corp., 967 F.2d 846 (3d Cir. 1992). Likewise,

mere conjecture or speculation by the resisting party will not provide a basis upon which to deny the motion.  Robertson v. Allied Signal, Inc., 914 F.2d 360, 382-83 n.12 (3d Cir. 1990).  It follows from these principles that plaintiff's factually unsupported boiler-plate defenses fail to provide shelter from the enforcement of an unwanted contractual obligation.

For the reasons set forth above, defendants' motion to compel arbitration will be granted.  An appropriate order will follow.


Date:  September 19, 2013

                                               s/ David Stewart Cercone
                                               David Stewart Cercone
                                               United States District Judge


cc:     Peter D. Giglione, Esquire
          Ryan J. Duty, Esquire
          Joseph D. Talarico, Esquire
          Michael H. Weiss, Esquire
          Benjamin R. Ogletree, Esquire
          William J. Moorhead, Jr., Esquire
          Eugene A. Giotto, Esquire
          Patrick M. Quinn, Esquire
          Rick L. Brunner, Esquire

          (*Via CM/ECF Electronic Mail*)